# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Huntington National Bank, *successor-by-merger to TCF National Bank*, | Case No. 22-CV-2271 (JMB/DTS) |
| Plaintiff, | |
| v. | **ORDER** |
| Physician's Auditing and Billing Services Inc. and Douglas Davis, | |
| Defendants. | |

Mark G. Schroeder, Daniel N. Moak, Taft Stettinius & Hollister LLP, Minneapolis, MN, for Plaintiff Huntington National Bank.

Mark K. Thompson, MKT Law, PLC, Minneapolis, MN, for Defendants Physician's Auditing and Billing Services Inc. and Douglas Davis.

Defendant Physician's Auditing and Billing Services Inc. (PABS) entered into a commercial loan agreement with Plaintiff Huntington National Bank (Huntington),[1] which was guaranteed by PABS's CEO, Defendant Douglas Davis (together with PABS, Defendants). After PABS stopped making payments on the loan, Huntington sued Defendants for, among other things, breaching the commercial loan agreement and guaranty. Huntington now moves for summary judgment on its breach-of-contract claims. For the reasons set forth below, the Court grants in part and denies in part Huntington's

---

[1] Huntington is the successor-by-merger to TCF National Bank. Though some events referenced in this Order occurred prior to the relevant merger, for the sake of simplicity, Plaintiff will be referred to as "Huntington."

motion for summary judgment on its contract claims (Counts I and II) and dismisses Huntington's remaining non-contract claims (Counts III–VI).

# FACTS

On April 7, 2021, PABS purchased computer equipment and software (the Equipment) for its business from a non-party equipment vendor for a total purchase price of $339,359.05. (Doc. No. 1-1 [hereinafter, Compl.] at Ex. A.[2]) PABS engaged a non-party broker to facilitate this transaction. (*E.g.*, Doc. No. 28 ¶ 3; Doc. No. 24-2 at 18:16–21:4.)

To finance the purchase of the Equipment, PABS entered into an Installment Payment Agreement (IPA) with Huntington on April 7, 2021. (*See* Compl. at Ex. B [hereinafter, IPA].) In order to obtain the loan financing, PABS assigned Huntington a security interest in the Equipment and made assurances to Huntington that PABS had already received and was satisfied with the Equipment. (Compl. at Ex. D; IPA ¶¶ 3, 5.) To this end, PABS "confirm[ed], represent[ed], warrant[ed] and agree[d]" that, as of April 7, 2021,

> (i) all of the Software and Equipment described in the IPA has been delivered to [PABS] at the Location set forth in the IPA and has been accepted by [PABS] through a duly authorized representative, [and]
>
> . . . .

---

[2] Huntington submitted a declaration of Jordan Shamblott, a Huntington "officer and financial recovery representative," in which Shamblott verifies the truth and accuracy of the factual allegations in the Complaint and its exhibits. (*See* Doc. No. 23 ¶¶ 3–4.)

>   (iii) the Software and Equipment is exactly what [PABS] ordered and is satisfactory in all respects and has been accepted by [PABS] . . . .

(Compl. at Ex. D.) Relatedly, PABS and Huntington agreed that PABS alone bore responsibility for the Equipment in the event of "any loss, theft or destruction of, or damage to" it. (IPA ¶ 5.)

Under the IPA's terms, PABS was to repay Huntington over a five-year period in sixty monthly installment payments of $6,637.96 each, with the first installment due on May 8, 2021. (*Id.* ¶ 2.) Huntington and PABS also agreed that, if PABS failed to make a payment by or before the 18th day of any given month, Huntington had the right to impose a late fee up to 10% of the amount of the late payment. (*Id.*) PABS further agreed that its payment obligations under the IPA were "absolute and unconditional and shall not be subject to any defenses . . . of any kind" regardless of whether the Equipment "is installed or implemented to the satisfaction of [PABS]" or whether "any . . . distributor breaches any of its obligations, warranties or covenants relating to the [Equipment.]" (*Id.* ¶ 10(a), (c).)

The IPA further provides that a failure by PABS to timely pay any monthly installment payment constitutes a material breach of the IPA, in which event Huntington would have the following available remedies, among others: (1) charging interest on the unpaid amount as liquidated damages; (2) accelerating all remaining payments, (3) making the remaining principal amount immediately due; (4) charging a penalty fee of 4% on the present value of future monthly installments; and (5) recovering expenses incurred by Huntington to enforce the IPA (including attorneys' fees and costs). (*See id.* ¶¶ 7(a), 8.)

3

Davis, PABS's CEO and sole shareholder, executed a Guaranty of PABS's obligations to Huntington under the IPA (Doc. No. 28 ¶ 1; *see also* Compl. at Ex. E [hereinafter, Guaranty]), under which he "unconditionally and absolutely guarantee[d] the full and prompt payment and performance when due (at maturity, by acceleration, or otherwise) of all payments, rents, debts, liabilities, and other obligations of every type and description of [PABS] to [Huntington] . . . ." (Guaranty.)  The Guaranty further provides that Davis's liability as Guarantor extends to all costs and expenses incurred by Huntington in connection with enforcement of the IPA and/or Guaranty, plus interest. (*Id.*)

Upon receipt of PABS's executed IPA and Equipment-receipt confirmation (among other things), Huntington paid the $339,359.05 principal loan amount directly to the non-party equipment vendor, as expressly directed and authorized by PABS. (Compl. at Ex. G.) PABS thereafter made timely monthly installment payments until, as described below, either July or September 2022. (*See* Doc. No. 23 ¶ 10, Ex. 3; Doc. No. 28 ¶ 5, Ex. B; Doc. No. 24-1 at Nos. 11, 12.)

Even though PABS confirmed to Huntington that it had received the Equipment before it executed the IPA, the undisputed record evidence shows that PABS never— neither before executing the IPA nor after—received any equipment from the non-party equipment vendor. (Doc. No. 28 ¶¶ 2–3, 6, 8, Ex. A.) Davis testified that PABS nevertheless made timely monthly installment payments to Huntington under the IPA for over a year because PABS "had the hope that the computer equipment would arrive and [Davis] wanted to honor the [loan] contract and be current when the equipment was located." (*Id.* ¶¶ 5–6, Ex. B.) However, Davis testified that, by July 2022—approximately

4

fifteen months after executing the IPA—the vendor still had not delivered the Equipment. (Doc. No. 24-2 at 64:2–11.) Davis testified as follows: "it reached a point where it [waiting for the Equipment] was ridiculous; that I wasn't going to get the equipment, so why pay for it?" (*Id.* at 64:14–16.)

Huntington and PABS agree that PABS stopped making monthly installment payments to Huntington altogether in the latter half of 2022; however, they dispute when PABS first missed a payment. Huntington argues and submitted record evidence showing that it last received payment from PABS in July 2022. In support of its motion, Huntington submitted a document, through the declaration of a Huntington "officer and financial recovery representative" entitled "Payment History Report—All Contract Payments" that appears to show payments from May 8, 2021, through July 8, 2022; entries in August, September, and October 2022 read: "ACH RETURN CHECK—Unaut."[3] (Doc. No. 23 ¶¶ 1, 10, Ex. 3.) Huntington also submitted documents showing that, in both August and September 2022, it notified PABS that its missed monthly payments constituted material breaches of the IPA. (Compl. Exs. H, I.)

Meanwhile, PABS argues and submitted conflicting record evidence showing that it last paid Huntington in September 2022. It submitted, through a declaration from Davis, a report characterized as a "copy of an accounting record showing the payments [PABS] made to TCF Bank and Huntington National Bank through September 2022," which

---

[3] The record evidence submitted in connection with this motion do not interpret or otherwise make clear the meaning or significance of these "ACH RETURN CHECK" entries. (*See* Doc. No. 24-2 at 57:18–59:5.)

5

appears to show that PABS made monthly payments through September 2022. (Doc. No. 28 ¶ 5, Ex. B.) Further, Davis testified that PABS stopped making payments to Huntington "by October of 2022," and, in an answer to Huntington's requests for admissions, PABS denied that it failed to make the August and September payments. (Doc. No. 24-1 at Nos. 11, 12, 13; Doc. No. 24-2 at 68:22–69:3.)

On September 19, 2022, Huntington filed a six-count Complaint against Defendants, which set forth the following claims:[4] (1) a breach-of-contract claim against PABS for breach of the IPA; (2) a breach-of-contract claim against Davis for breach of the Guaranty; (3) a claim-and-delivery action, by which Huntington seeks to recoup the Equipment (collateral for the IPA loan) from PABS; (4) a priority-of-interest claim, by which Huntington seeks a declaration of the superiority of its interest in the Equipment; (5) an unjust-enrichment claim (in the alternative); and (6) a promissory/equitable-estoppel claim (in the alternative). (Doc. No. 1 ¶¶ 35–71.)

## DISCUSSION

Huntington now moves for summary judgment on Counts I and II, its two breach-of-contract claims. (*See* Doc. No. 22.) Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty*

---

[4] In accordance with the IPA's and the Guaranty's governing-law provisions, all of Huntington's claims arise under or are governed by Minnesota law. (IPA ¶ 11; Guaranty.)

*Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, to survive the motion, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). In this case, though there is no genuine issue of fact concerning whether PABS breached the IPA, there remains a question of fact concerning when the breach occurred.

**I.      No Genuine Dispute of Fact Exists as to Occurrence of Breach**

Huntington argues that it is entitled to summary judgment on its breach-of-contract claims because the undisputed record evidence shows that PABS materially breached the IPA when it failed to make monthly installment payments. (*See generally* Doc. No. 22 at 7–11.) Defendants do not dispute that PABS stopped making monthly installment payments. However, they argue that a condition precedent had not yet occurred, thereby relieving them of any obligation to make the payments required by the IPA. The Court is not persuaded by Defendants' argument.

To prevail on its motion, Huntington must show that there is no genuine dispute of material fact on any element of its breach-of-contract claims, including the following: "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011). Defendants contest the second and third elements, arguing that actual receipt of the Equipment from the non-party vendor is a condition precedent to Huntington's right to repayment. However, pursuant to the unambiguous language of the IPA, the Court concludes that actual receipt of the Equipment is not a condition precedent because the IPA

does not clearly and unequivocally provide that PABS's payment obligation is conditional.

Under Minnesota law, "[a] condition precedent is a contract term that calls for the performance of some act or the happening of some event after the contract is entered into, and upon the performance or happening of which [the promisor]'s obligation is made to depend." *Capistrant v. Lifetouch Nat'l Sch. Studios, Inc.*, 916 N.W.2d 23, 27 (Minn. 2018) (quotation omitted). Minnesota law "reflects the general rule that conditions must be literally met or exactly fulfilled, or no liability can arise on the promise qualified by the condition." *Id.* at 27–28 (quotation omitted). No special terms or particular code words are necessary to create a condition precedent; however, there must at least be some "clear and unequivocal" language that suggests that the agreement, or its terms, are conditioned upon some event. *Carl Bolander & Sons, Inc. v. United Stockyards Corp.*, 215 N.W.2d 473, 476 (Minn. 1974). To "clear[ly] and unequivocal[ly]" signal an intent to bind themselves to a condition precedent, contracting parties typically use terms such as "unless," "until," "contingent upon," "subject to," "provided that," "as soon as," and "after," among others. *See, e.g.*, *Comprehensive Care Corp. v. RehabCare Corp.*, 98 F.3d 1063, 1066 (8th Cir. 1996) (providing that phrases such as "if," "provided that," "when," "after," "as soon as," and "subject to" traditionally indicate conditions precedent as opposed to contractual promises (citing *Standefer v. Thompson*, 939 F.2d 161, 164 (4th Cir. 1991)); *see also Aslakson v. Home Sav. Ass'n*, 416 N.W.2d 786, 789 (Minn. App. 1987) (concluding that the use of the term "contingent upon" in the contracted created a condition precedent); *451 Corp. v. Pension Sys. for Policemen & Firemen*, 310 N.W.2d 922, 923–24 (Minn. 1981) (concluding that the use of the term "subject to" in the

8

contracted created a condition precedent); *Carl Bolander & Sons, Inc.*, 215 N.W.2d at 476 (concluding that the use of the term "assuming that" in the contracted created a condition precedent). Conditions precedent are "especially disfavored when the obligee has no control over the occurrence of the event in question." *Mrozik Constr., Inc. v. Lovering Assocs., Inc.*, 461 N.W.2d 49, 52 (Minn. App. 1990) (citing *Thos. J. Dyer Co. v. Bishop Int'l Eng'g Co.*, 303 F.2d 655, 661 (6th Cir. 1962)).

Here, the IPA sets forth PABS's repayment obligation as follows:

> *In consideration of* the financing provided by [Huntington], [PABS] shall pay to [Huntington] the Financed Amount, together with interest thereon by paying each of the following when specified . . . consecutive monthly installments each equal to the Payment Amount set forth above for the Number of Payments set forth above less the number of Advance Payments made upon delivery of this IPA, with such consecutive monthly Payments beginning on the date that is one month after the Funding Date and then on the same day of each calendar month thereafter.

(IPA ¶ 2 (emphasis added).) This language does not clearly and unequivocally indicate that Huntington and PABS meant for PABS's repayment obligation to hinge on the occurrence of any event except Huntington's release of the loan financing. *See* Restatement (Second) of Contracts § 2 (1981) (providing that "in consideration of" is not a contingency but rather a contractual promise); *see also Mrozik*, 461 N.W.2d at 52 (declining to find implied condition precedent such that construction contractor had no obligation to pay subcontractor in event owner did not pay contractor because subcontract had no clear and unequivocal risk-shifting language to that effect). Indeed, at the hearing on this motion, Defendants' counsel conceded that the IPA had neither an express nor

9

implied condition precedent to PABS's obligation to make the monthly installment payments. (*See* Tr. at 14:1–17:14.)

The Court further observes that actual delivery of the Equipment cannot be a condition precedent to repayment because the IPA does not require actual delivery of the Equipment; it only requires that PABS provide Huntington with "confirmation" of the Equipment's delivery, as follows:

> Upon [PABS]'s acceptance and execution of this IPA, receipt of any amounts due upon signing of this IPA, receipt of other documentation required by [Huntington], *confirmation that the Software and Equipment has been accepted by [PABS]* and no material adverse change in [PABS]'s condition or business, [Huntington] will pay the Financed Amount . . . directly to the Software and Equipment vendor(s) on the terms and conditions set forth herein.

(IPA ¶ 1 (emphasis added).) To the extent that provision of such confirmation can be construed as a condition precedent, this condition was undisputedly satisfied: PABS concedes it provided the required confirmation to Huntington, even though it had not actually received the Equipment. (Doc. No. 23 ¶ 3; Doc. No. 1-1 at 12). Moreover, PABS's act of confirmation is one that triggers *Huntington's* funding obligation and cannot be reasonably understood as a condition of *PABS's* repayment obligation.

On the factual record before the Court and under the terms of the IPA, there is no unfulfilled condition precedent to PABS's obligation to re-pay the loan amount. As a result, PABS breached the IPA when it stopped making monthly installment payments, and Davis breached the Guaranty when he did not cure the breach. (*See* IPA ¶ 7(a); Guaranty.)

**II.     Genuine Disputed Facts Remain Concerning Time of Breach and Damages**

Huntington argues that, as a result of Defendants' breach, it is entitled to damages under the IPA's terms in the amount of $302,499.78.[5] (Doc. No. 23 ¶ 5; *see also* IPA ¶¶ 2, 8(a).) The Court agrees that Huntington is entitled to damages under the IPA as a result of PABS's breach. However, the Court disagrees with Huntington's damages calculation to the extent it relies on an August 8, 2022 breach date.

As noted above, the parties agree that PABS stopped making monthly installment payments, but they disagree about when PABS's non-payment first occurred. According to Huntington, PABS made its last monthly installment payment in July 2022 and, thus, the breach occurred and has been ongoing since August 8, 2022; according to PABS, its last payment occurred in September 2022 and the breach first occurred and has been ongoing since October 8, 2022. The record evidence thus conflicts regarding the date of the last installment payment. This creates a genuine dispute of material fact that the Court cannot resolve now because, on a motion for summary judgment, "the court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." *Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008). Further, the Court must make "all justifiable inferences" in favor of the non-movant. *Anderson*, 477

---

[5] Huntington's urged damages sum comprises the following: the value of 17 unpaid and overdue installments (August 8, 2022–December 8, 2023) ($112,845.32); the present value of 28 remaining future installments with 6.49% interest ($172,147.75); a 4% non-payment penalty, calculated as 4% of the present value of the 28 future installments ($6,885.91); and late fees calculated as 10% of the amount of a regular monthly installment multiplied by 16 overdue payments ($10,620.80). (Doc. No. 23 ¶¶ 5–9; IPA ¶¶ 2, 8(a).)

U.S. at 255.  The Court thus adjusts Huntington's damages calculation consistent with an October 8, 2022 breach date, which is consistent with the undisputed factual record before the Court.  This adjusted calculation, as set forth *infra*, entitles Huntington to $287,896.26 in damages.

**III.    Reasonableness of Huntington's Requested Attorneys' Fees and Costs**

Finally, Huntington seeks an additional sum of $22,845.65 in attorneys' fees and $2,179 in costs incurred in this action through December 12, 2023.  (Doc. No. 24 ¶¶ 8–13.)  Defendants do not challenge any of Huntington's specific damages or attorneys' fee calculations.  (*See generally* Doc. No. 26.)

Huntington bears the burden of establishing an accurate and reliable factual basis for an award of attorneys' fees, and the Court has wide discretion to make a fee award determination.  *Philipp v. ANR Freight Sys., Inc.*, 61 F.3d 669, 675 (8th Cir. 1995).  The Court may rely on its experience and knowledge of prevailing market rates to determine whether the requested attorneys' fees are reasonable.  *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005).

Huntington's attorneys aver that Huntington has incurred $22,845.65 in legal fees in this matter from the pleading stage through briefing on summary judgment.  (Doc. No. 24 ¶¶ 9, 11.)  Huntington's attorneys have not provided documentation to support these claimed fees but have offered to make them available to the Court, if desired.  (*Id.* ¶ 10.)  The Court acknowledges that in similar matters—some with the same procedural posture— judges in this District have issued similar attorneys' fees awards to Huntington when Huntington was represented by the same attorneys.  *See Huntington Nat'l Bank v. Restored*

*Health Inc.*, No. 22-CV-599 (NEB/DLM), 2023 WL 8434475, at *3 (D. Minn. Oct. 16, 2023) (concluding, after review of attorney billing records, that attorneys' fee award of $25,723.25 following summary judgment on breach of commercial loan agreement was reasonable and similar to award in similar matter); *Huntington Nat'l Bank v. Green Sheet Mktg., LLC*, No. 21-CV-2000 (WMW/DTS), 2022 WL 17127765, at *6 (D. Minn. Nov. 22, 2022) (awarding $25,955.25 in attorneys' fees and costs based on similar dispute resolved in motion for default). Further, given Defendants' lack of response to Huntington's claimed fees, the Court deems Huntington's claimed attorneys' fees undisputed. Fed. R. Civ. P. 56(e) (permitting Court to consider unopposed facts as undisputed).

The Court concludes that Huntington's request for attorneys' fees, to date, are reasonable. However, a final attorneys' fee award will be determined after final judgment.

### ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Huntington's motion for summary judgment on Counts I and II is GRANTED IN PART and DENIED IN PART.

    a. Huntington's motion for summary judgment is DENIED as to the period August 8, 2022–October 7, 2022.

    b. Huntington's motion for summary judgment is GRANTED as to the period starting October 8, 2022, and Huntington shall recover from Defendants jointly and severally an award as follows:

        i. $99,569.40 for the 15 overdue and unpaid monthly installments from October 8, 2022 through December 8, 2023;

13

      ii. $172,147.75 to reflect the present value of 28 remaining installments at 6.49%;

      iii. $6,885.91 as a 4% penalty in accordance with the penalty provision in IPA ¶ 8;

      iv. $9,293.20 in late fees; and

      v. Reasonable attorneys' fees and costs in an amount to be determined after final judgment.

2. Counts III–VI of the Complaint (Doc. No. 1) are DISMISSED[6]

    a. Counts III and IV shall be dismissed WITHOUT PREJUDICE.

    b. Counts V and VI shall be dismissed WITH PREJUDICE.

Dated: June 4, 2024                                             /s/ Jeffrey M. Bryan
                                                                                            Judge Jeffrey M. Bryan
                                                                                            United States District Court

---

[6] Huntington asks that, in the event the Court grants its motion for summary judgment on Counts I and II, it wishes to "voluntarily dismiss[] the remaining counts of the Complaint," (i.e., Counts III–VI), under Federal Rule of Civil Procedure 41(a)(1)(A)(i). (Doc. No. 22 at n.5.) The Court will dismiss the remaining counts as follows. First, Huntington's equitable quasi-contract claims for unjust enrichment and promissory estoppel (Counts V and VI) are extinguished because a contract—the IPA—governs the parties' relationship. *See Del Hayes & Sons, Inc. v. Mitchell*, 230 N.W.2d 588, 593 (Minn. 1975) (observing that promissory estoppel claim is precluded where express contract exists); *Midwest Sports Mktg., Inc. v. Hillerich & Bradsby of Can., Ltd.*, 552 N.W.2d 254, 268 (Minn. App. 1996) (discussing nature of unjust enrichment as equitable claim that arises when party gains benefit unlawfully and observing that "equitable relief cannot be granted where the rights of the parties are governed by a valid contract."). Thus, Counts V and VI will be dismissed, with prejudice. Second, as to the claim-and-delivery and priority-of-interest claims (Counts III and IV), Huntington's counsel agreed at oral argument that dismissal under Federal Rule of Civil Procedure 41(a)(2) would be appropriate. Given this acknowledgment and because Defendants would not be prejudiced by the dismissal, the Court dismisses Counts III and IV under Rule 41(a)(2), without prejudice.